IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22 CV 0474 |
| | ) | |
| v. | ) | Judge Robert W. Gettleman |
| | ) | |
| SMITH & COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Wells Fargo Bank, N.A. brings a one-count complaint against Smith & Company, Inc. for breach of contract. On February 10, 2023, plaintiff moved for summary judgment (Doc. 55). On February 16, 2023, defendant moved to strike plaintiff's motion for summary judgment (Doc. 62), which the court denied (Doc. 66). For the reasons discussed below, the court grants plaintiff's motion for summary judgment (Doc. 55).

## BACKGROUND

The court discussed the instant case's background in its prior ruling, Wells Fargo Bank, N.A. v. Smith & Co., Inc., No. 22 CV 0474, 2023 WL 2915407 (N.D. Ill. Apr. 12, 2023), and it reviews this background to the extent necessary to rule upon the instant motion.

On or about April 23, 2018, plaintiff, a national bank, entered into a lease agreement ("the first contract") with defendant, which is located in Port St. Lucie, Florida, to finance certain equipment. On or about May 10, 2018, plaintiff, as secured party, entered into a single-sided equipment finance agreement ("the second contract") with defendant, as debtor, to finance other equipment.[1] On February 15, 2019, defendant failed to make the payments due under both

---

[1] Defendant does not dispute that it owes the balance of the second contract, and it never returned the second contract equipment to plaintiff.

contracts and all payments thereafter, which is an event of default under both contracts. Upon an event of default, plaintiff is entitled to seek the balance owed under the contracts, along with other costs and fees.

According to plaintiff, when defendant stopped making payments, defendant attempted to sell the equipment by calling three or four of its competitor contractors, but defendant failed to find a buyer. Defendant emphasizes that the equipment at issue is specialized industrial technology equipment, which can be attached to machinery to provide precise measurements through Global Positioning System ("GPS") and cellular data. The parties do not dispute that it can be difficult to determine whether technology equipment works without verifying its functionality, and after sale the equipment must be reconfigured to fit new machinery.

After failing to find a buyer, defendant gave some of the equipment to the dealer of the collateral, Sitech North & Central Florida ("Sitech"). According to Sitech's employee, Robert Curry ("Curry"), Sitech sells new and used GPS and robotic machine control systems, and related products. Curry testified that Sitech is the only dealer of new equipment like the first contract equipment in northern and central Florida, as well as the only dealer authorized to perform warranty repairs on such equipment. Like defendant, Sitech was unable to sell the equipment after several months, during which it kept an eye out for customers who might be interested.

Sitech prepared a spreadsheet with recommended prices for the used pieces of equipment at issue, which included certain highlighted items that were either not picked up by Sitech or that defendant did not give to Sitech. In a typical transaction, Sitech would use the listed values as a "starting point," which Sitech calculated as 70 percent (70%) of the new list price based on book values from its fleet. Curry testified that Sitech used such starting points for equipment in "good

working order," and it was successful in getting its 70% number "most of the time," although he could not testify to the proper value of the used equipment in this case "[w]ithout testing the equipment." The total recommended used price for the first contract equipment listed on Sitech's spreadsheet is $290,497.

After Sitech failed to sell the equipment, plaintiff's third-party remarketing agent, Remarketing Solutions International ("RSI"), obtained the equipment on or about October 31, 2019. Most of RSI's customers deal with office equipment, but Andres Gonzalez ("Gonzalez"), an RSI employee, testified that RSI had previously sold one system like the specialized first contract equipment (a "Trimble system"). He further testified that he had seen such GPS construction equipment installed and used at trade shows in the past, and he researched the relevant market online, searching for specialized companies that might be interested in its purchase. When Gonzalez identified prospective buyers, he cold-called them. Through his efforts, which extended throughout the United States, Mexico, and Canada, two prospective buyers expressed interest in the equipment. The parties do not dispute that the equipment appeared to be in good condition, despite Gonzalez's testimony that some pieces were missing.

The parties dispute, however, whether plaintiff sent defendant a "notice of sale" prior to RSI selling the equipment. According to plaintiff's employee, Jill Jones ("Jones"), plaintiff prepared and sent such notification on November 14, 2019. Based on plaintiff's business records, Jones testified that plaintiff sent the notice to defendant's known principal place of business of the past nine years using overnight Federal Express. She testified that she knew that she prepared and sent the notice because her initials are listed at the end of the notice, after the date, and she entered notes in plaintiff's system about her sending the notice. Defendant claims that it never received the notice of sale, in addition to several default letters that plaintiff claims

to have sent. According to defendant, plaintiff never sent the notice of sale, and even if it did,

defendant never received it. There is no documentation from Federal Express indicating that it

delivered the notice of sale, but there is also no documentation that the notice was never

delivered, which Jones testified that Federal Express had sent in the past. Jones testified that she

does not specifically remember sending the notice of sale to defendants because she deals with

many such notices on any given day.

Although two prospective buyers expressed interest in the equipment, only one made RSI

an offer. On or about February 5, 2020, 4K Equipment LLC, a supplier of new and used

equipment in the GPS field, among others, contacted RSI about the equipment and made an offer

for $75,000.00. RSI then notified plaintiff of the offer, and that 4K Equipment LLC would travel

to Florida to inspect the equipment if plaintiff approved the offer.[2]

On or about February 11, 2020, plaintiff accepted the offer. Plaintiff's valuation team

previously analyzed the equipment and concluded that the fair market value was approximately

$58,000.[3] Plaintiff's employee, Michael Wood ("Wood") testified that plaintiff's valuation team

determines fair market value by reviewing internal and external sales figures, secondary market

comparables, trade publications, and contacts within the industry. In the instant case, Wood

testified that the valuation team used online research for secondary market comparables, but he

had no personal involvement in repossessing or re-marketing the first contract equipment.

After accepting the offer, plaintiff, as seller, issued a bill of sale to RSI, as buyer, to allow

RSI to finalize the sale to 4K Equipment LLC for $75,0000. Following the sale, plaintiff gave

RSI a commission, and applied the rest toward the balance of the contract. According to

---

[2] The other inquiry was from Advanced Geodetic Surveys, Inc., an equipment dealer that specializes in mapping and land surveying equipment, on January 24, 2020. It never made an offer, despite RSI following up on its interest.
[3] There is no evidence, or argument, that RSI had access to Sitech's "starting point" spreadsheet.

plaintiff, defendant has not paid plaintiff for the balance of the first contract, in addition to repossession costs, late fees, prejudgment interest, and attorneys' fees and court costs. Defendant disputes the remaining balance, because it argues that plaintiff has waived the costs of RSI's commission, and that plaintiff is not entitled to both late fees and pre-judgment interest. Further, defendant argues that plaintiff has not fulfilled its legal obligations under the contract, including its obligations to give defendant notice of sale via certified mail,[4] and to dispose of the equipment in a commercially reasonable manner. For example, Curry, a Sitech employee who was not involved in RSI's sale, testified that the price seems "low" to him.

## LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden, and the court must view all facts in the light most favorable to the nonmovant and draw all reasonable inferences in their favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). But the nonmovant must do more than raise "some metaphysical doubt as to the material facts." Id. at 586. Rather, the nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## DISCUSSION

Under Illinois law (which the contracts apply), the elements of a breach of contract claim are: (1) the existence of a valid and enforceable contract; (2) substantial performance of all conditions to be performed by plaintiff; (3) breach of the contract by defendant; and (4) damages to plaintiff as a result. See TAS Distrib. Co. v. Cummins Engine Co., 491 F.3d 625, 631 (7th

---

[4] The contract states that "any notices and demands required to be given shall be given to the parties in writing and by certified mail at the address set forth."

Cir. 2007).  Plaintiff argues that it is entitled to summary judgment because no reasonable jury

could find that it has not met all elements of its breach of contract claim against defendant.

Defendant does not dispute that it owes the balance of the second contract ($25,925.24), but it

does dispute whether it owes the balance of the first contract.  Defendant disputes whether

plaintiff has fulfilled its obligations to perform by providing defendant with a notice of sale and

selling the equipment in a commercially reasonable manner.

The court first evaluates defendant's argument that plaintiff has not performed under the

first contract because it did not properly send defendant a notice of sale.  According to defendant,

there is a genuine dispute whether plaintiff sent the notice in the first place, given that there is no

documentation of receipt.  In the alternative, if plaintiff did send notice of sale, defendant argues

that plaintiff did not satisfy its contractual obligation to send the notice via certified mail; rather,

Jones expressly testified that plaintiff sends such notices by Federal Express.  Moreover,

defendant argues that there is a genuine dispute whether the notice itself was adequate because it

did not accurately describe the collateral to be disposed of, or the charge for an accounting.

Defendant emphasizes that the inventory listed in the notice of sale does not match the

equipment listed in RSI or Sitech's inventories.

Conversely, according to plaintiff, there is no genuine dispute regarding notice of sale

because plaintiff sent the notice to defendant's principal place of business, and Illinois law does

not require proof of receipt.  See 810 ILCS 5/9-611(b), (c).  Further, plaintiff emphasizes that

sending a notice of sale via Federal Express is "not materially different from sending notice via

certified mail," and Illinois law does not require a particular method of transport.

The court agrees with plaintiff that Illinois law does not require a notice of sale to be sent

using certified mail, or with a receipt of delivery.  Illinois law requires that a secured party

disposing of collateral "shall send" to the debtor, as well as other parties entitled to notice, a

reasonable authenticated notification of disposition. See 810 ILCS 5/9-611(b), (c). See also

Ryder v. Bank of Hickory Hills, 242 Ill. App. 3d 1042, 1047 (1st Dist. 1993) ("This section does

not require proof of 'actual receipt' by the debtor to satisfy the reasonable notice requirement. To

send reasonable notice, the notification must be deposited in the mail with postage pre-paid and

properly addressed.") (internal citation omitted). The court accepts that plaintiff had an

additional obligation to provide notice via certified mail, pursuant to its contract with defendant,

and the parties were free to impose stricter requirements for notice than required by Illinois law.

Under Illinois law, however, plaintiff is required to "substantially perform" its contractual

obligations to establish a successful claim for breach of contract. See Rsrv. Hotels PTY Ltd. v.

Mavrakis, 790 F.3d 738, 741 (7th Cir. 2015). Plaintiff indirectly addresses this issue by

analyzing whether Federal Express was a reasonable method of providing notice.

Under the doctrine of substantial performance, a party must demonstrate "all the essential

elements necessary to the accomplishment of the purpose of the contract." Id. (Internal citation

omitted). According to plaintiff, the purpose of the notice requirement is to allow defendant to

exercise its right to redemption (which defendant admits it did not have the funds to do), afford

defendant an opportunity to find buyers for the collateral (which defendant tried, but failed, to

do), and allow defendant to oversee the disposition of the collateral to maximize the fair sales

price (which, plaintiff argues, defendant attempted, but failed, to do when it sent the equipment

to Sitech). See Boender v. Chicago N. Clubhouse Ass'n, Inc., 240 Ill. App. 3d 622, 631 (1st

Dist. 1992).

While Illinois law provides that "[t]he reasonableness of notice is usually a question of

fact," id., defendant provides no evidence to suggest a genuine dispute whether plaintiff

7

substantially performed its obligation to provide notice under the contract by using Federal

Express.  Although plaintiff did not send its notice via certified mail, defendant provides no

evidence to counter plaintiff's business records, or Jones's testimony, which demonstrate

plaintiff's good-faith effort to effectuate notice of sale to defendant's principal place of business,

regardless of whether defendant received such notice.

The court also rejects defendant's argument that there is a genuine dispute whether

plaintiff substantially performed its obligations under 810 ILCS 5/9-613(1), to describe the

collateral that is subject to the intended disposition and state the charge for an accounting of the

unpaid debt.  Defendant provides evidence that RSI sold a few more pieces of equipment (based

on its inventory) than listed in the notice of sale, and the notice provided a phone number to

inquire about an accounting charge.  It is true that whether the contents of a notice are sufficient

is a question of fact, but defendant does not provide affirmative evidence to allow a reasonable

jury to conclude that the contents of plaintiff's notice of sale fail to "substantially" provide the

required information, or are more than "minor errors that are not seriously misleading."  810

ILCS 5/9-613(2), (3)(B).

The court next evaluates defendant's argument that there is a genuine dispute whether

plaintiff's sale of the first contract equipment, through RSI, was conducted using reasonable

commercial practices under 810 ILCS 5/9-610(b).  According to defendant, a reasonable jury

could find that plaintiff, through RSI, did not dispose of the first contract equipment in a manner

that is "otherwise in conformity with reasonable commercial practices among dealers in the type

of property that was the subject of the disposition."  810 ILCS 5/9-627(b)(3).  Defendant argues

that the only evidence of "commercial practices among dealers in the type of property being

disposed" is Curry's testimony that the price seems "low" to him, as a Sitech employee.

8

Defendant emphasizes that RSI is not a dealer of GPS construction equipment and had "almost no experience" with valuing or selling it.

Under Illinois law, a "low" price is not itself sufficient to establish a violation of the commercial reasonableness requirement, but a low price signals to the court that it should carefully scrutinize all aspects of the disposition. 810 ILCS 5/9-627, Official Comment 1. RSI's ultimate price of $75,000 is lower than Sitech's 70% starting-point price of $290,497, but the court agrees with plaintiff that there is no evidence that RSI failed to act in a commercially reasonable manner in disposing of the first contract equipment. Even Curry, an employee of a purported dealer in the type of property being disposed, testified that he could not give a value for the equipment without testing it first. Further, a "starting point" is not the same as an ultimate sales price, even if Sitech obtains that price "most of" the time. This is especially true where both defendant and Sitech were unable to obtain <u>any</u> offers for the equipment before RSI did so.

While commercial reasonableness is generally a question of fact, it is not a barrier to summary judgment where defendant fails to offer evidence of a factual basis to demonstrate a genuine issue for trial. See <u>Fifth Third Bank v. Holly Marine Towing, Inc.</u>, No. 06 C 3831, 2007 WL 9812984, at *1 (N.D. Ill. May 30, 2007). Defendant emphasizes that RSI does not have the same experience dealing with specialized technology equipment as Sitech, but that does not demonstrate that plaintiff acted in an unreasonable manner by choosing RSI to conduct the sale, or that RSI's efforts to conduct the sale were unreasonable. Instead, the evidence shows that RSI had experience selling used equipment, and success with selling similar equipment for plaintiff in the past, despite its experience being limited to one prior occasion. The evidence further demonstrates that RSI's employee Gonzalez researched the relevant market, and expanded his

search range and active search effort beyond the range and search effort of Sitech and defendant. Gonzalez's efforts resulted in the only offer on the table, which was higher than its estimated value by plaintiff's internal valuation department, even if the offer was from a dealer rather than an end-user.

Defendant's conclusory disappointment with the only offer on the table does not show that plaintiff acted in a commercially unreasonable manner under Illinois law.  Defendant may speculate that plaintiff could have received a higher offer, but speculation does not change the court's conclusion in this case.  No reasonable jury could find that it was commercially unreasonable for "dealers in the type of property being disposed" to accept the only available offer, especially after three companies attempted the sale, including an authorized dealer.

## CONCLUSION

For the reasons discussed above, the court grants plaintiff's motion for summary judgment (Doc. 55).  The parties are directed to file a joint status report on the issue of damages on or before July 26, 2023.  If necessary, the court will schedule a hearing on the appropriate damages.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE:   July 5, 2023**